UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ANTHONY CLARKE,<br><br>   Plaintiff<br><br>v.<br><br>CHUCK ALLEN, et. al.,<br><br>   Defendants | Case No.: 3:17-cv-00582-MMD-WGC<br><br>**Order**<br><br>Re: ECF No. 25 |

Before the court is Plaintiff's letter requesting an "income and expense report for end of most recent fiscal year." (ECF No. 25.)

Plaintiff filed his pro se complaint on September 21, 2017, and subsequently requested to amend his complaint. (ECF Nos. 1-1, 5.) The court advised him that he had neither paid the filing fee nor filed an application to proceed in forma pauperis (IFP), and sent him the form to complete the IFP application, which he did. (ECF Nos. 4, 7.) Plaintiff sought to sue former Sheriff Chuck Allen for events that took place while he was a pretrial detainee at the Washoe County Detention Facility (WCDF). (ECF No. 11.)

The court screened the amended complaint and found Plaintiff stated a colorable Eighth Amendment deliberate indifference to serious medical needs claim against a John Doe doctor, and dismissed Plaintiff's access to courts claim and Eighth Amendment deliberate indifference to serious medical claim against Sheriff Allen without prejudice and with leave to amend. Plaintiff's IFP application was granted, noting that an inmate proceeding IFP has to pay the full filing fee over time, and that he would be required to do so even if the action were dismissed or was otherwise unsuccessful. (ECF No. 10.)

1    Plaintiff subsequently substituted in John Cutler for the John Doe doctor. (ECF No. 13.)
Cutler was ultimately dismissed for lack of service under Federal Rule of Civil Procedure 4(m).
(ECF No. 19.) Plaintiff did not timely amend the claims dismissed with leave to amend.

Despite being advised that he would still have to pay the filing fee over time even if his action was dismissed or was otherwise unsuccessful, Plaintiff filed a letter with the court asking where the filing fees go, stating that he received his "full faith and credit through an adoption of all the Americans through the Athabascan in (2015) file no# (15024649-1)"; that he is a "secured party creditor"; and, he is not a "debtor" and is exempt from having to pay the filing fee in this court. (ECF No. 21.) The undersigned construed Plaintiff's letter as a request for a refund of the filing fee or an order that he be relieved of his obligation to pay the filing fee over time. The court denied the request, noting that it did not accept the theories advanced by Plaintiff, and reiterated that Plaintiff remains obligated to pay the $350 filing fee over time. (ECF No. 24.)

Plaintiff has now sent a letter to the court requesting an income and expense report for the end of the most recent fiscal year. (ECF No. 25.) It is not clear what kind of income and expense report, or whose report, Plaintiff is referring, but it appears his inquiry relates to his previously asserted theory that he is not obligated to pay the filing fee over time.

Plaintiff's filings contain multiple indicia of his adherence to the "sovereign citizen" anti-government movement. As one court described it:

> Though the precise contours of their philosophy differ among the various groups, almost all antigovernment movements adhere to a theory of a 'sovereign' citizen. Essentially, they believe that our nation is made up of two types of people: those who are sovereign citizens by virtue of Article IV of the Constitution, and those who are 'corporate' or '14th Amendment' citizens by virtue of the ratifications of the 14th Amendment. The arguments put forth by these groups are generally incoherent, legally, and vary greatly among different groups and different speakers within those groups. They all rely on snippets of 19th Century court opinions taken out

> of context, definitions from obsolete legal dictionaries and treatises, and misplaced interpretations of original intent. One of the more cogent [—] in the sense that it is readily followed— arguments is that there were no United States citizens prior to the ratification of the 14th Amendment. All Americans were merely citizens of their own state and owed no allegiance to the federal government. As a result of that amendment, however, Congress created a new type of citizen—one who now enjoyed privileges conferred by the federal government and in turn answered to that government.
>
> One of the ramifications of this belief is the dependent belief that, unless one specifically renounces his federal citizenship, he is not the type of citizen originally contemplated by the Constitution. And, in their view, the Constitution requires all federal office holders to be the original or sovereign type of citizen, a state citizen rather than a United States citizen. As a result, all federal officers are holding office illegally and their laws and rules are thus constitutionally suspect.

*United States v. Mitchell*, 405 F.Supp.2d 602, 605 (D.Md. 2005) (internal citation and quotation marks omitted).

Other courts have described a similar theory based on the belief that passing the Fourteenth Amendment led to fictitious entities:

> Supposedly, prior to the passage of the Fourteenth amendment, there were no U.S. citizens; instead, people were citizens only of their individual states. Even after the passage of the Fourteenth Amendment, U.S. citizenship remains optional. The federal government, however, has tricked the populace into becoming U.S. citizens by entering into 'contracts' embodied in such documents as birth certificates and social security cards. With these contracts, an individual unwittingly creates a fictitious entity (*i.e.*, the U.S. citizen) that represents, but is separate from, the real person. Through these contracts, individuals also unknowingly pledge themselves and their property, through their newly created fictitious entities, as security for the national debt in exchange for the benefits of citizenship.

*Bryant v. Wash. Mut. Bank*, 524 F.Supp.2d 753, 758 (W.D. Va. 2007).

"The attempt to divide oneself into two separate entities … is a legal fiction and has been struck down consistently in courts and around the country. *See Santiago v. Century 21/PHH Mortg.*, 2013 WL 1281776, at *5 (N.D.Ala. Mar. 27, 2013) (citing cases).

Plaintiff's filings makes it evident that he adheres to the same type of "sovereign citizen" theories that have been flatly rejected by this nation's courts. This court, like others across the country, concludes that "'sovereign citizens,' like all citizens of the United States, are subject to the laws of the jurisdiction in which they reside." *Paul v. New York*, 2013 WL 5973138, at *3 (E.D.N.Y. Nov. 5, 2013) (quotation marks and citations omitted). "[T]he conspiracy and legal revisionist theories of 'sovereign citizens' are not established law in this court or anywhere in this country's valid legal system." *Id*. (citation and quotation marks omitted); *see also United States v. James*, 328 F.3d 953, 954 (7th Cir. 2003) ("Laws of the United States apply to all persons within its borders."); *United States v. Benabe*, 654 F.3d 753, 767 (7th Cir. 2011) ("Regardless of an individual's claimed status of descent, be it as a 'sovereign citizen,' a 'secured-party creditor,' or a 'flesh-and-blood human being,' that person is not beyond the jurisdiction of the courts. These theories should be rejected summarily, however they are presented.").

The court rejects Plaintiff's theories, and he is subject to the laws of this jurisdiction and remains obligated to pay the $350 filing fee over time. Plaintiff's request for an income and expense report (ECF No. 25) is **DENIED**.

**IT IS SO ORDERED**.

Dated: June 29, 2020

_William G. Cobb_
William G. Cobb
United States Magistrate Judge